McKinney, J.,
delivered the opinion of the court.
Singleton Foster died intestate in the State of Virginia, about the year 1812. The complainant, Sarah Foster, is his widow, and the other complainant, Mary Davis, (wife of Samuel. Davis, defendant,) is his only surviving child.
The intestate was possessed, at the time of his death, of six slaves. Two of said slaves were alloted to the widow, a part of her dower interest, under the law of Virginia. The other four slaves were assigned to the three children of the intestate, who were living at the time of his death, and who survived for some years afterwards; but, of whom, two died in Virginia intestate and without issue, prior to the year 1824, before attaining the age of twenty-one years; and the complainants, (the mother and sister,) succeeded as next of kin, to their interests in said slaves.
In 1824, the defendant, Davis, intermarried with the complainant, Mary, in the State of Virginia; and in the same year, said Davis and wife, together with the complainant, Sarah Foster, removed to this State, where they have ever since resided, and lived together as one family. On their removal from Virginia, they brought *478 with, them the said slaves, the increase of whom, has since been considerable.
Before the filing of this bill, the defendant, Jordan, recovered a jucfgment against the defendant, Davis, and caused an execution to issue thereon, and to be levied on thirteen of said slaves. This bill was brought to restrain the sale of, said slaves, on the ground that they are the joint property of the complainants, and therefore not subject to be levied upon for the satisfaction of the debts of defendant, Davis. The slaves levied upon, are, in part, the same slaves assigned to the widow and children of the intestate, and, in pai’t, the increase of said slaves. On the death of the two children of the intestate, the complainants succeeded, in equal moities, to their interests in said slaves; and no division of said slaves has ever been made between the complainants.
The complainant, Mary Davis, is the owner of her original one third part of said four slaves, and their increase, and one half of the two-third parts of said two deceased children. Tire complainant, Mary Davis, has also, the reversionary interest in the two slaves allotted to the widow, Sarah Foster; the widow, by the law of Virginia, taking only a life interest in slaves.
Upon this state of facts, had the defendant, Davis, any such interest in said slaves, as was subject to be levied on for the satisfaction of his debts?
First, in respect to the slaves allotted to the complainant, Mrs. Foster, as widow of the intestate, as part of her dower interest. By the statute laws of Virginia, it is declared that, “ If any widow possessed of a slave or slaves, as of the dower of the husband, shall remove, or voluntarily permit to be removed, out of the commonwealth, such slave or slaves, or any of their increase, *479 without the consent of him or. her, in reversion, such widow shall forfeit all and every such.slave or slaves, and all other the dower which she holds of the endowment of her husband’s estate, unto the person or persons that shall have the reversion thereof.” Under this provision, it is argued, for the defendant Jordan, that by the act of removing the slaves allotted to her, to this State, in 1824, the complainant, Mrs. Foster, forfeited all title to said slaves, she having failed to prove, affirmatively, that such removal was with the consent of Davis and wife; and that by such forfeiture, the title instantly and absolutely vested in the defendant, Davis, "We are not aware of the construction put upon this statute by the courts of* Virginia, but construing it for ourselves, we differ altogether in opinion with the defendant’s counsel, as to its proper construction. "We think that the consent of Davis and wife, in whom the reversion was vested, like every other matter of evidence, may be established by presumptive evidence; and, that from the mere fact of their removal as one family, in the absence of all opposing evidence, the consent of Davis and wife, to the removal of the dower slaves, must be presumed to have been given. Such a forfeiture is to be taken strictly. And, the circumstances are certainly sufficient, at all events, to shift the burthen of proof. So, as to demand of the party insisting upon the forfeiture, proof that the consent was not given. This would be so, as against the reversioner himself, we think; and his creditor can stand in no better condition. Nor is there any force in the objection, that Mrs. Davis being at the time of removal a feme covert? and under the age of twenty-one years; was incapable of srivinsr consent to the removal.
*480 If the ’ question to be decided depended alone upon her consent, it might well admit of debate, whether, if, in point of fact, her consent to the removal was actually given, she would not be precluded from afterwards insisting upon the forfeiture, notwithstanding her coverture at the time, on the principle that the privileges of infancy 'or coverture are not to be abused, or to be available for dishonest or fraudulent purposes. But, be this as it may, her husband was capable, in her right, of giving such consent, either expressly or impliedly; and this is an end of the question.
2. It is said the defendant, Davis, acquired a title to said slaves, so far as relates to the interest of Mr. Foster, by operation of the statute of limitations. ¥e do not think so. Living together under the same roof, and as one family, and having a mixed concurrent possession <of the slaves, the presumption of law is, that each was ■holding consistently with his own right, as also with the right of the others, and that the possession was with the right. And, although there is an apparent conflict in the evidence upon the point, yet, the presumption is not overthrown.
The alleged acts of adverse claim and ownership, on the part of Davis, are capable of explanation. Davis being the head of the family, and having the management and control of the labor and services of the slaves, and 'this, too, -with the consent, express or implied, of Mrs. Foster, his exercise of the ordinary acts of ownership over said slaves, or calling them “ his slaves,” or even pledging one of them for his own debt, with the assent of Mrs. Foster, would not necessarily establish that he was claiming or holding them in hostility to her right. The most that can be said upon this point is, that the *481 evidence, on the part of the defendant, Jordan, leaves the question in some-doubt; but this doubt, we think, is removed by the testimony on the other side, and the legal presumption applicable to the facts of the case.
3. As respects his wife’s interest in said slaves, the marital right of the defendant, Davis, has never yet attached, for the reason that the slaves still remain undivided, and in common between the wife and her mother. The marital right does not attach upon slaves of the wife in such a predicament, as we have repeatedly held; and, therefore, the husband. had no interest liable to execution, as against the wife’s equity. And with regard to the reversionary interest in the dower slaves, held by Mrs. Foster for life, we have held, in another case, at the present Term, that reversionary interests in slaves are not subject to execution at law.
We think that, upon well settled principles, their rights are sufficiently established to entitle them to the interposition of a court of equity, as sought by their bill; and, therefore, the decree will be affirmed. ■